**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jeffrey D. Woods, | No. CV-12-08184-PCT-NVW |
| Plaintiff, | **ORDER** |
| vs. | |
| Carolyn W. Colvin, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Jeffrey D. Woods seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied him disability insurance benefits under sections 216(i) and 223(d) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.   BACKGROUND**

    **A.   Factual Background**

Woods was born in October 1957. He has at least a high school education and is able to communicate in English. His past relevant work includes roofer and carpenter.

In February 2003, Woods fell off a roof while working, sustaining a head injury and fractures of his face, right hip, and both arms. Although he underwent hip replacement surgery, he continued to experience pain in his hip. He received disability

benefits for his physical injuries for the period from February 2003 to November 2004. For parts of 2005 and 2006 he answered phones for a roofing company.

In January 2007, Woods entered a court-ordered substance abuse treatment program for inhalant abuse. He has been treated for depression, memory loss, auditory hallucinations, nerve palsy, and migraine headaches. In 2009, Woods was diagnosed with diabetes.

Woods is able to drive a car and a motorcycle. He does his own grocery shopping and laundry and prepares his own meals. He socializes with friends and sees his mother on a regular basis. He testified that he is unable to work because he cannot climb ladders, lift and carry, and go on roofs like he used to and because he does not remember things and has difficulty concentrating.

### B.   Procedural History

On November 26, 2008, Woods applied for disability insurance benefits, alleging disability beginning September 6, 2006. On March 31, 2011, he appeared with his attorney and testified at a hearing before the ALJ. A vocational expert also testified.

On May 27, 2011, the ALJ issued a decision that Woods was not disabled within the meaning of the Social Security Act. The Appeals Council denied Woods's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision. On September 13, 2012, Woods sought review by this Court.

## II.   STANDARD OF REVIEW

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate

to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

## III.  FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still

capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## IV.    ANALYSIS

The ALJ found that Woods meets the insured status requirements of the Social Security Act through June 30, 2011, and that he has not engaged in substantial gainful activity since September 6, 2006. At step two, the ALJ found that Woods has the following severe impairments: history of substance abuse with inhalant-induced dementia and psychotic symptoms, mood disorder, history of total hip replacement, and asthma. At step three, the ALJ found that Woods does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

At step four, the ALJ found that:

> [T]he claimant has the residual functional capacity to perform the following: light exertion; no more than occasional postural functions but never climb ladders, ropes, or scaffolds; no work environments with hazards or concentrated exposure to heat; and no limitations for unskilled work but moderate limitations in the ability to understand, remember, and carry out detailed instructions (or difficulties with such activity but possessing the ability to perform it satisfactorily).

The vocational expert testified that a person with Woods' age, education, and work experience and the foregoing limitations would have skills transferable to the job of hardware sales representative. At step five, the ALJ concluded that:

> Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569(a), and 404.1568(d)).

### A.   The ALJ Did Not Err in Weighing Medical Source Evidence.

#### 1.   Legal Standard

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians:  (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, more weight should be given to the opinion of a treating physician than to the opinions of non-treating physicians.  *Id.*  Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record.  *Id.*  Moreover, the Commissioner must give weight to the treating physician's subjective judgments in addition to his clinical findings and interpretation of test results.  *Id.* at 832-33.

Further, an examining physician's opinion generally must be given greater weight than that of a non-examining physician.  *Id.* at 830.  As with a treating physician, there must be clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons, supported by substantial evidence in the record, for rejecting an examining physician's contradicted opinion.  *Id.* at 830-31.

The opinion of a non-examining physician is not itself substantial evidence that justifies the rejection of the opinion of either a treating physician or an examining

- 5 -

physician. *Id.* at 831. "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. Factors that an ALJ may consider when evaluating any medical opinion include "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion." *Orn*, 495 F.3d at 631.

Moreover, Social Security Rules expressly require a treating source's opinion on an issue of a claimant's impairment be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). If a treating source's opinion is not given controlling weight, the weight that it will be given is determined by length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, relevant evidence supporting the opinion, consistency with the record as a whole, the source's specialization, and other factors. *Id.* Where there is a conflict between the opinion of a treating physician and an examining physician, the ALJ may not reject the opinion of the treating physician without setting forth specific, legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F.3d at 632.

### 2. The ALJ Did Not Err by Giving Little Weight to the Assessment by Treating Psychiatrist Vasilios Kaperonis, M.D.

Woods contends the ALJ erred by "rejecting" the opinion of treating psychiatrist Dr. Vasilios Kaperonis because his records are consistent regarding memory problems, auditory hallucinations, and cognitive problems, including concentration; because the industrial physician, Dr. Daniel T. Maletesta, stated a finding of memory and cognitive

- 6 -

problems after testing; and because treating neurologist Dr. Joshua Tobin's November 2, 2006 report discussed mild short-term memory loss and auditory hallucinations.

On November 5, 2009, Dr. Kaperonis opined that Woods had serious impairment of his short term memory and ability to concentrate, was socially inept and withdrawn, was unable to adapt successfully to changing circumstances, and was especially vulnerable to stress. On September 20, 2010, Dr. Kaperonis opined that Woods had marked limitations in his abilities to understand and remember short, simple instructions; carry out short, simple instructions; and make judgments on simple work-related decisions. He further opined that Woods had extreme limitation in his abilities to understand and remember detailed instructions; interact appropriately with the public, supervisors, and co-workers; respond appropriately to work pressures in a usual work setting; and respond appropriately to changes in a routine work setting.

The ALJ provided clear, convincing, specific, and legitimate reasons, supported by substantial evidence in the record, for giving "little weight" to Dr. Kaperonis' assessments. The ALJ found that Dr. Kaperonis' assessment was not substantiated by the evidence of record, including his own treatment records. The ALJ identified evidence of record showing:

> With respect to activities of daily living, the claimant is independent and is able to: prepare meals; do some house cleaning; drive a car and a motorcycle; shop for food; go out on dates; spend a weekend with his motorcycle club; attend his grandson's Little League games; and do some fishing [].

> Despite Dr. Kaparonis' characterization of the claimant as "socially inept and withdrawn" and having "limited social contacts," the claimant spends time with others, including his parents and his son; has no problem getting along with family, friends, neighbors and others; gets along okay with authority figures; has talks with his neighbor; gets together with a couple of friends to have dinner or to watch television; goes out on dates; has friends who allow him to stay in their

- 7 -

> homes; and spends weekends with his motorcycle club []. The undersigned notes that Dr. Kaperonis' own treating records do not support the level of severity in social functioning indicated in the psychiatrist's responses to the questionnaires [].
>
> In regard to concentration, persistence or pace, the claimant has recently been issued a Class D driver's license, indicating that state licensing authorities and treating physicians do not consider his cognitive impairments significant enough to revoke his driving privileges []. He is able to drive both a car and a motorcycle []. Furthermore, while he claims to need someone with him when driving because he gets lost or disoriented, he was observed to drive, by himself, from his home to a gas station then to someone's home several miles away, all the while obeying traffic laws, adhering to the posted speed limit, and properly using his turn signals [].

The ALJ further noted that although Dr. Kaperonis reported throughout treatment Woods had "significant memory problems and auditory hallucinations (with varying degrees of impact)," he provided little basis for his assessment of extremely restrictive limitations in social interaction.

   The ALJ also found Dr. Kaperonis' opinion inconsistent in other ways:

> Despite noting significant cognitive deficits, including memory and concentration difficulties, the treating psychiatrist finds the claimant capable of managing benefit payments in his own interest []. The record demonstrates, however, that the claimant cannot take care of his finances anymore; and, at the hearing, he testified that his mother pays his bills for him because of his problems handling money []. Finally, Dr. Kaperonis' limitations and determination of disability are not supported by the claimant's daily activities, including preparing meals; cleaning the house; driving both a car and a motorcycle and getting his driver's license renewed recently; shopping for food; going out on dates; spending weekends with his motorcycle club; attending his grandson's Little League games; and doing some fishing [].

On January 19, 2007, Dr. Malatesta performed a neuropsychological evaluation of Woods. Test results indicated that Woods' general cognitive ability was in the extremely low range of intellectual functioning and, although he graduated from high school, he performed at a fourth grade level in reading, second grade level in spelling, and third grade level in arithmetic. His working memory, *i.e.*, ability to receive verbally presented information, process the information in memory, and then formulate a response, was in the "far below average" to "below average" range. His visual-motor performance received a developmental age score of 8 years, 6 months. Test results also suggested a high probability that Woods had a substance dependent disorder; his responses indicated "significant and severe use of both alcohol and illegal drugs."

On an Objective Personality Measure of the Minnesota Multiphasic Personality Inventory, Dr. Malatesta reported that Woods obtained an Invalid Profile for the following reasons:

> He responded to the MMPI-2 items in an exaggerated manner, endorsing a wide variety of symptoms and attitudes. These results **may** stem from a number of factors, including indiscriminately claiming extreme psychological problems, a low reading level, a "plea for help," or severe psychological deterioration or psychosis. His responses were probably not random because he was consistent in his item responses. The resulting MMPI-2 profile is **not** likely to be a valid indication of his personality and symptoms. . . .
>
> A severe psychosis should also be ruled out since he did not exhibit signs of psychopathology in his presentation during the course of this evaluation. He did not exhibit any behaviors, nor did he verbalize any comments that would suggest that he is out of touch with reality. There is also the possibility that Mr. Woods may have been consciously exaggerating or malingering in an attempt to obtain some desired goal, such as financial benefits from a supportive agency.

Dr. Malatesta concluded that Woods appeared to be "functioning at a level commensurate with an individual who would be considered mildly mentally retarded," exhibited signs of organic impairment, and appeared to "have a significant substance abuse problem which has interfered with his treatment." Dr. Malatesta emphasized that his testing of Woods' social/emotional/personality functioning was invalid because Woods had "clearly exhibited an exaggeration of symptomatology in these findings that can, at the very least, be considered an extreme or desperate cry for help, and/or as malingering to obtain financial benefits." Thus, Dr. Malatesta's evaluation does not support Dr. Kaperonis' assessment of extremely restrictive limitations in social interaction, nor did it require the ALJ to give more than little weight to Dr. Kaperonis' opinions regarding Woods' limitations in memory and concentration.

Woods also contends that Dr. Kaperonis' opinions regarding memory and concentration are consistent with those of Dr. Tobin. He cites to Dr. Tobin's treatment notes, dated November 2, 2006, which state: "Memory remains mildly impaired for short-term but intact for longer-term." Dr. Tobin's observation of mild impairment of short-term memory does not support Dr. Kaperonis' assessment of marked and severe limitations.

Therefore, the ALJ provided clear and convincing reasons for giving Dr. Kaperonis' opinion little weight and did not err in weighing treating medical source evidence.

### 3. The ALJ Did Not Err by Implicitly Rejecting Dr. Tobin's Opinion.

Woods contends the ALJ did not discuss Dr. Tobin's opinion that Woods was unable to work. However, the ALJ expressly stated in a footnote:

> In November 2006, Dr. Tobin, the neurologist, determined that the claimant was unable to work from September 2006 to (presumably) March 2007, a period of less than one year [].

- 10 -

> Dr. Tobin also indicated that the claimant "may never be able to" work again []. Because of the ambiguity in this opinion (and because determinations of disability are the exclusive province of the Commissioner), it is given little weight.

Therefore, the ALJ did not implicitly reject Dr. Tobin's opinion that Woods was unable to work. Moreover, the Commissioner is responsible for determining whether a claimant meets the statutory definition of disability and does not give significance to a statement by a medical source that the claimant is "disabled" or "unable to work." 20 C.F.R. § 416.927(d). Therefore, the ALJ did not err regarding Dr. Tobin's opinion.[1]

### B.     The ALJ Did Not Clearly Misinterpret Evidence to Woods' Detriment.

Woods also contends that the ALJ committed legal error by giving weight to Dr. Desch's opinion referenced by Dr. Kaperonis, failing to accept Dr. Malatesta's GAF test results, and giving some weight to the opinion of Dr. Gallucci, a state agency psychological consultant.

The ALJ identified and described Dr. Kaperonis' September 30, 2009 treatment note, which referenced an evaluation by Dr. Mary Desch, a psychiatrist. The ALJ said she found Dr. Desch's diagnosis of inhalant-induced persistent dementia more persuasive than Dr. Kaperonis' position. Dr. Desch believed Woods' psychotic symptoms and auditory hallucinations improved significantly because he had discontinued inhalant abuse; Dr. Kaperonis believed the improvement was due to the medications he had prescribed, and therefore the medications should be continued. The two psychiatrists disagreed as to the cause of and appropriate treatment for Woods' psychotic symptoms

---

[1] Woods summarily states the ALJ erred by implicitly rejecting the opinion of the surgeon who performed his hip replacement "that his patient has limited on feet capacity." The record cited shows that on April 12, 2006, before the alleged onset date of disability, the surgeon opined that Woods could sit for 4 hours at a time and could sit for 8 hours in an 8-hour work day, but gave no opinion regarding the length of time Woods could stand or walk. The ALJ did not err by not commenting on the surgeon's omission of an opinion.

- 11 -

and auditory hallucinations, and the ALJ found Dr. Desch's reasoning more persuasive. However, the disagreement regarding the cause and treatment and the ALJ's finding regarding which position was more persuasive is irrelevant to the disability determination because both psychiatrists agreed that Woods's symptoms had improved. Although Dr. Desch's report was not in the record and the ALJ found Dr. Desch's diagnosis "more persuasive," Dr. Desch's opinion did not affect the disability determination.

Woods also contends the ALJ should not have given any consideration to Dr. Desch's opinion because it may have been made in 2003 and therefore not relevant. Dr. Kaperonis' treatment note states that Woods was evaluated by Dr. Desch after his last visit with Dr. Kaperonis, which was July 21, 2009. Therefore, the timing does not make it irrelevant.

Woods also contends the ALJ erred by not discussing Dr. Malatesta's findings of a GAF score of 50, extremely low intellectual functioning, and extremely low working memory. The ALJ's hearing decision does not indicate that she misinterpreted these findings. Rather, it states them and also that Dr. Malatesta determined, provisionally, that Woods was malingering.

Finally, Woods contends the ALJ erred by giving some weight to Dr. Gallucci's opinion and little weight to Dr. Kaperonis' opinion when Dr. Gallucci did not include an assessment of Dr. Kaperonis' records. In fact, the ALJ found that the evidence of record did not entirely support the severity of limitations found by either doctor, but Dr. Gallucci's opinion was more consistent with the evidence and deserving of some weight. Dr. Kaperonis opined that Woods had extreme limitations in social functioning, Dr. Gallucci opined that Woods had moderate limitations in social functioning, and the ALJ found the record showed only mild difficulties in social functioning. Dr. Kaperonis opined that Woods had serious impairment of concentration, Dr. Galluci opined that Woods had moderate restrictions in maintaining concentration, and the ALJ found the

record showed moderate difficulties in concentration, persistence, or pace.  As found above, the ALJ provided clear, convincing, specific, and legitimate reasons, supported by substantial evidence, for giving Dr. Kaparonis' opinion little weight and did not err.

IT IS THEREFORE ORDERED that the final decision of the Commissioner of Social Security is affirmed.  The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 8th day of April, 2013.

_____
Neil V. Wake
United States District Judge